THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, vs. CHARLES A. SPANOGLE et al.—(JAMES L. McKEAN et al. Appellants.)

*Opinion filed October 22, 1927.*

1. HIGHWAYS—*sections 9 and 11 of the Bond Issue act of 1917 authorize deviation from the old highway.* Section 9 of the Bond Issue act of 1917, providing that the Department of Public Works and Buildings may make such minor changes in the location of routes as may be necessary in carrying out the provisions of the act, and section 11, providing for exercise of the power of eminent domain, authorize a deviation from the route of an existing public highway; and an entirely new route for more than two miles over private property is not necessarily arbitrary and unreasonable where it is shown to be the most practicable route when public safety and the interests of the State at large are considered.

2. SAME—*provisions of sections 9 and 11 of Bond Issue act of 1917 are included in title.* The provisions of sections 9 and 11 of the Bond Issue act of 1917 permitting the Department of Public Works and Buildings to make changes in the route of an existing highway in constructing hard roads and authorizing the taking of private property by eminent domain are not invalid as having no proper connection with or relation to the title of the act, but such provisions, on the contrary, are conducive to the consummation of the purpose expressed in the title and are germane to the general subject of the act.

3. STATUTES—*what satisfies constitutional provision as to title.* The constitutional provision that no act shall embrace more than one subject, which shall be expressed in the title, prohibits the passage of an act containing provisions not fairly included in the title, and the general purpose of the constitution is accomplished when a law has but one general subject which is fairly indicated by its title, even though it contains many diverse provisions, provided they are not inconsistent with or foreign to the subject and may be considered in furtherance of it by providing for the method and means of effectuating it.

4. SAME—*what constitutes the subject of an act.* The subject of an act means the matter or thing forming the groundwork of the act, and may include many provisions that are germane to it and are such that if traced back will lead the mind to the subject as the generic head.

5. SAME—*constitutional provision as to title of act will be liberally construed.* The General Assembly must determine for itself how broad and comprehensive the object of a statute shall be and how much particularity shall be employed in the title defining it, and the constitutional provision as to the title will be liberally construed, so as not to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which the provision was adopted.

APPEAL from the County Court of Carroll county; the Hon. ORION M. GROVE, Judge, presiding.

TURNBAUGH & EATON, W. A. BLODGETT, and McCALMONT & RAMSAY, for appellants.

OSCAR E. CARLSTROM, Attorney General, (JOHN L. BREARTON, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Department of Public Works and Buildings of this State filed its petition in the county court of Carroll county under the act of June 22, 1917, known as the Sixty Million Dollar Road Bond Issue act, (Laws of 1917, p. 696; Cahill's Stat. 1925, p. 2101;) to ascertain the just compensation to be paid certain land owners for right of way to constitute a part of Route No. 40 as defined in the act. Certain of the defendants filed a joint and several answer setting forth objections to the petition and concluding with a motion to dismiss it. The objections were overruled and the motion was denied. Thereafter a jury assessed the damages of the several land owners. Motions for a new trial and in arrest of judgment were made and denied and judgment was rendered upon the verdict. James L. McKean and Ray F. Allison, two of the land owners, prosecute this appeal.

Route No. 40 is described in section 9 of the act of June 22, 1917, as "beginning in a public highway on the north line of the city of Sterling and running in a north-

westerly direction to Milledgeville, thence to Chadwick, thence north to connect with Route No. 27, and beginning at a highway on the north line of the city of Mt. Carroll and running north to Stockton." This route as laid out by the Department of Public Works and Buildings through the village of Milledgeville and to the northwest of that village is indicated by the letters Q S A B C on the following plat:

From point C the route follows a public highway west about three and one-half miles to the village of Chadwick.

Through the territory shown by the plat the route is laid out over public streets and highways with the exception of the portion between the letters A and B, which is located over private property. This portion is slightly in excess of· two miles in length. The appellee seeks to acquire from the appellants by the instant proceeding approximately the westerly 4250 feet of the easterly one-half of the portion of the route between A and B,—that is, about 2850 feet from the appellant McKean and the remaining 1400 feet from the appellant Allison.

Prior to the final determination to locate Route No. 40 as indicated by the letters Q S A B C and thence west, the location of the route south of the Chicago, Burlington and Quincy railroad over streets and public highways, as indicated by the letters Q R X Y B, had been considered by the appellee, and arrangements had been made to acquire the private property necessary to allow curves of sufficient radii at street and highway intersections. The distance between the portion of the route A B and the highway south of the railroad varies from 500 to 2300 feet. The plan to locate Route No. 40 over the highway last mentioned was never approved by the appellee.

O. F. Goeke, the appellee's engineer for the district comprising ten counties in the northwestern part of the State, including Carroll county, testified that he supervised the preparation of the plans for Route No. 40; that as the result of experience the appellee had formulated a policy concerning the location and building of the bond issue trunk highways which sought to make them suitable not only for present but also future traffic and which kept in view the interest of the State as a whole rather than the interest of the particular community. He further testified that when it was determined to locate a route, the appellee notified the district office to make an investigation of the comparative merits of the locations that could be reasonably considered as feasible from an engineering, technical and practical

point of view; that the preliminary investigation of the various routes involved, among other things, a consideration of the length of the road, the amount of grading and bridge work to be done and the dangers of railroad crossings at grade; that following this investigation, maps and a detailed report concerning the best location for the route were prepared; that from the different locations considered, a first, second and third choice were requested by the appellee, and that from all the data and information obtained the route was finally designated by the appellee.

It appears from the evidence that physical conditions and various features of construction entered into the appellee's consideration of the routes north and south of the railroad. Route No. 40 as laid out involves the construction of a subway under the railroad between points Q and S at an approximate cost of $20,000. The subway, when built, will eliminate a dangerous grade crossing which now exists in the village of Milledgeville. The business district of the village lies north of the railroad, and the subway on the route as proposed will afford the people who live south of the railroad or approach from that direction safe access to the center of the village. While a high school is located between points A and S upon the route as laid out, and in the location of a through highway the proximity of a school is avoided whenever feasible, yet in this instance the playground is to the rear of the building and the pupils attending this school are not wholly immature, for their ages range from fourteen to eighteen years. Route No. 40 might be located north of the railroad over existing public highways exclusively, as indicated by points A D E F C, but if so located there would be, over and above the route as laid out, three additional right-angle turns, which would increase the dangers of operation, an additional $18,000 would be required for construction and the annual cost of maintenance would be $200 greater. Moreover, the district engineer testified that Route No. 40 is a Federal aid road, and

that the Federal government promotes the separation of the grades of trunk line highways and railroad crossings wherever possible.

From the testimony of the district engineer it appears that if Route No. 40 had been located south of the railroad a right-angle turn to the west at point Q would be necessary; that this turn, to accord with sound engineering practice, would require a radius of not less than 300 feet and the consequent taking of ground on which a house is situated; and that a turn with a radius of from 300 to 500 feet, as compared with the ordinary one at the intersection of two streets, increases the distance within which the driver of a vehicle may view the turn, and hence permits travel at a greater rate of speed and makes operation more safe when the weather is inclement or the pavement is slippery. Proceeding west from point Q to point R, thence north to point X and thence northwesterly to point Y, a turn would be made at each point. The district engineer further testified that safe operation of vehicles at each of these corners would require a turn with a radius of 500 feet; that such a radius in each of these instances would involve the taking of private property, and that two curves in a trunk line highway within close proximity of each other, such as those at points R and X, should be avoided wherever possible. Route No. 40 if located as indicated by points Q R X Y would cross the railroad by means of a viaduct at point B. This overhead crossing would require an extensive fill at each approach and its cost would be about the same as that of a subway. The crossing would be nearly three miles west of the village of Milledgeville, and, if built, the grade crossing in the village would remain. If the route had been located south of the railroad it would pass a common school in the village of Milledgeville, a short distance west of point Q. The presence of children in large numbers so near a through highway would increase the danger of personal injury or loss of life. The existence of sewers in

certain streets of the village was, in the opinion of the appellee, another obstacle to this location of this route, for in making house connections with these sewers, trenches would be dug to the middle of the street under the hard-surfaced pavement. These reasons, among others, were deemed sufficient by the appellee to reject the plan to locate Route No. 40 south of the railroad.

Appellants make various contentions for a reversal of the judgment. These contentions may be reduced to the following: (1) The act of June 22, 1917, requires the construction of the State-wide system of durable, hard-surfaced roads upon public highways of the State, and it does not authorize the Department of Public Works and Buildings to open or lay out new highways upon which to construct any portion of those roads; (2) if the act attempts to authorize the department to open or lay out new roads and to condemn the right of way therefor, the provisions to that end are not mentioned in or contemplated by the title of the act and are therefore unconstitutional and void; (3) the departure from the public highways in the location of Route No. 40 is not a minor change such as is contemplated in or authorized by the act of June 22, 1917; and (4) even though such change should be held to be a minor change within the terms of the act, yet it is not necessary to carry out the provisions of the act and for that reason is unauthorized.

The title of the act by authority of which the instant proceeding was instituted is, "An act in relation to the construction by the State of Illinois of a State-wide system of durable, hard-surfaced roads upon public highways of the State and the provision of means for the payment of the cost thereof by an issue of bonds of the State of Illinois." (Laws of 1917, p. 696; Cahill's Stat. 1925, p. 2101.) Section 1 of the act provides that a State-wide system of durable, hard-surfaced roads shall be constructed by the State upon its public highways "along the hereinafter de-

scribed routes, as near as may be." * * * By section 2 it is provided, among other things, that the construction of the State-wide system of roads, and all work incidental thereto, shall be under the general supervision and control of the Department of Public Works and Buildings, subject to the approval of the Governor. Section 9 provides that the general location of the routes upon and along which the proposed roads are to be constructed shall be substantially as described in that section, so as to connect with each other the different communities and the principal cities of the State, save that the Department of Public Works and Buildings shall have the right to make such minor changes in the location of said routes as may become necessary in order to carry out the provisions of the act. This section defines the courses of the several routes and fixes their termini. Section 11 provides that whenever the making of any part of the proposed improvement, or the locating of a route or any part thereof, will require that private property be taken or damaged, the Department of Public Works and Buildings, in its name, shall have the right to purchase the necessary land, or, if the compensation therefor cannot be agreed upon, to have it ascertained, and to acquire and pay for the property in the manner provided by law for the exercise of the right of eminent domain.

The provisions that the State-wide system of durable, hard-surfaced roads shall be constructed upon public highways along the routes described, "as near as may be;" that the general location of the routes shall be substantially as defined; that the appellee may make such minor changes in the location of a route as may become necessary to effectuate the provisions of the act; and that the power of eminent domain may be exercised to acquire private property for a route or part of a route, show that primarily the durable, hard-surfaced roads must be constructed on public highways, but that departures therefrom, under certain conditions, are authorized. The avoidance of physical ob-

stacles, the attainment of proper grades, alignment and construction, the elimination of dangerous conditions, the safe operation of traffic, the saving of excessive and unnecessary costs and expenses of construction and maintenance, and the interest of the State rather than of the particular community, are considerations, among others, which impelled the General Assembly to allow some discretion in the location of a route for a durable, hard-surfaced road. The departures from public highways contemplated by the act of June 22, 1917, usually constitute a small proportion of the whole route, forming an integral part thereof, and they are not independent public highways. The appellants' first contention cannot be sustained.

The constitutional provision that no act shall embrace more than one subject, which shall be expressed in the title, prohibits the passage of an act containing provisions not fairly included in the title. (*Milne* v. *People,* 224 Ill. 125; *Rouse* v. *Thompson,* 228 id. 522; *Sutter* v. *People's Gas Light Co.* 284 id. 634; *Public Service Co.* v. *Recktenwald,* 290 id. 314.) The subject of an act means the matter or thing forming the groundwork of the act, and may include many provisions that are germane to it and are such that if traced back will lead the mind to the subject as the generic head. (*People* v. *Solomon,* 265 Ill. 28; *Perkins* v. *County Comrs.* 271 id. 449.) The general purpose of the constitutional provision is accomplished when a law has but one general subject which is fairly indicated by its title. The title is not required to be an index to or as comprehensive in matters of detail as the body of the act, but if the title fairly indicates the general subject and reasonably covers all the provisions of the act and is not calculated to mislead the General Assembly or the people it is a sufficient compliance with the constitutional requirement. Unless the act contains matters which have no proper connection with or relation to the title, or the title itself contains subjects without any proper relation to each other, the con-

stitutional provision is not violated.  The General Assembly must determine for itself how broad and comprehensive the object of the statute shall be and how much particularity shall be employed in the title defining it.  An act having a single, general subject indicated in the title may contain many provisions, however diverse, if they are not inconsistent with or foreign to the subject and may be considered in furtherance of it by providing for the method and means of effectuating it.   (*People* v. *Stacker,* 322 Ill. 232; *Manaster* v. *Kioebge,* 257 id. 431;  *People* v. *McBride,* 234 id. 146;  *People* v. *Nelson,* 133 id. 565;  *Public Service Co.* v. *Recktenwald, supra; Perkins* v. *County Comrs. supra; Sutter* v. *People's Gas Light Co. supra.*)   There has been a general disposition to construe this constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which the provision was adopted.   (Cooley's Const. Lim.—7th ed.—p. 209.) It is the purpose of the act of June 22, 1917, as stated in its title, to construct a State-wide system of durable, hard-surfaced roads upon public highways of the State.   The subject of the act, because of its nature, would be expressed generally in the title.   To permit minor changes in the location of a route to be made should be considered as a necessary, implied power to carry out the purpose expressed in the title of the act, rather than as an enlargement of the subject or as the creation of a right not contemplated by the title.   Unusual conditions upon public highways may create the necessity for deviations therefrom in locating the route of a hard-surfaced road.   To assert that such changes have no proper connection with or relation to the title of the act is unreasonable, for, on the contrary, when necessary they are conducive to the consummation of the purpose expressed in the title.   The provision which authorizes such changes to be made is germane to the general subject of the act.

The appellants' third and fourth contentions, that the location of a portion of Route No. 40 over private property is not a minor change such as is contemplated by the act, and that, even if it should be held to be such a change, it was unauthorized because unnecessary to carry out the provisions of the act, need not be considered at length. The considerations which led the appellee to locate the route over the private property in question have been reviewed. Some discretion must necessarily be vested in the agencies to which the consummation of a plan so extensive as the construction of a State-wide system of durable, hard-surfaced roads is committed. Arbitrary action in that respect may be prevented or restrained. Upon the facts and circumstances of the instant case it cannot be said that the appellee acted arbitrarily. When all the conditions are considered it acted within its power and authority. *People* v. *Department of Public Works and Buildings,* 320 Ill. 117.

The judgment of the county court is affirmed.

*Judgment affirmed.*