(Nos. 34124, 34125, Cons.—

SARA PICKUS *et al.,* Appellants, *vs.* BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.,* Appellees.—SHIRLEY LENS, Appellant, *vs.* BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.,* Appellees.

*Opinion filed November 27, 1956.*

Antonow & Weissbourd, and F. Raymond Marks, Jr., both of Chicago, (Joseph P. Antonow, Bernard Weissbourd, and David J. Lester, of counsel,) for appellants.

Frank R. Schneberger, of Chicago, (Frank S. Righeimer, James W. Coffey, and John T. Mehigan, of counsel,) for appellees.

ALEX ELSON, of Chicago, (WILLARD J. LASSERS, and AARON S. WOLFF, both of Chicago, and DUANE, MORRIS & HECKSCHER, of Philadelphia, Pennsylvania, of counsel,) for The American Friends Service Committee, Inc., *amicus curiae*, and JOHN LIGTENBERG, of Chicago, for Illinois State Federation of Teachers, *amicus curiae*.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

These appeals question the validity of section 30b of "An Act in relation to State finance," (Ill. Rev. Stat. 1955, chap. 127, par. 166b,) which withholds compensation from State employees who refuse to sign the loyalty affidavit therein set forth. Also presented is the question of its applicability to teachers in the public schools of Chicago.

Two complaints, for injunction and declaratory judgment respectively, were filed in the circuit court of Cook County against the Chicago Board of Education and its members. The respective plaintiffs are certain Chicago school teachers who refuse to execute the affidavit. They allege that because of such refusal they have been or will be denied compensation; that they are employees of the city and hence are specifically excluded by the terms of the statute; and that in any event the statute is unconstitutional and void. After consolidating the two cases the circuit court sustained defendants' motions to dismiss; and the plaintiffs having elected to stand on their complaints, judgments were entered accordingly. The plaintiffs appeal directly to this court, constitutional questions being involved.

Section 30b was enacted in 1955. It provides as follows: "No employee of the State of Illinois, or any political subdivision, agency or instrumentality thereof, but excluding cities, villages, incorporated towns, townships and counties, shall receive compensation or expenses from any appropriation which has been heretofore made, or which shall hereafter be made until such person has on file with his or her

employing authority the following affidavit signed under oath:

State of Illinois

United States of America } ss.

I, ———— do swear (or affirm) that I am not a member of nor affiliated with the communist party and that I am not knowingly a member of nor knowingly affiliated with any organization which advocates the overthrow or destruction of the Constitutional form of the government of the United States or of the State of Illinois, by force, violence or other unlawful means.

(Signed)————————————

————————————(seal)

Notary Public"

The contention that plaintiffs are excluded from application of the section, which must be considered first, rests upon the proposition that the Board of Education is a part of the city. It is argued that in view of the close relation of the school board to the city, and the respects in which the legislature has treated it differently from other public school systems in the State, school teachers in Chicago are employees of the city itself and therefore need not file the affidavit in order to receive pay.

It is true, as the plaintiffs point out, that the Board of Education is appointed by the mayor of Chicago with approval of the city council, that the treasurer of the city acts as treasurer of the board, that title to school property is held in the name of the city in trust for the use of schools, and that bond issues must be approved by the city council and countersigned by the mayor and comptroller. But such incidents do not obliterate the existence of the school district as a different corporate entity. (*Board of Education* v. *Upham,* 357 Ill. 263.) Bonds issued by authority of the statute, for example, are obligations of the Board of Education, not of the city (*Mathews* v. *City of Chicago,* 342 Ill. 120); and the board has its own limit

of indebtedness under the constitution, which is not affected by the city's indebtedness. (*Board of Education* v. *Upham*, 357 Ill. 263.) The two corporations have separate and distinct governmental purposes. The legislature created the board as a body politic for education of the youth, which is one of the paramount objects of government, and expressly provided that "No power vested in the board or in any of its officers, agents or employees shall be exercised by the city council." Ill. Rev. Stat. 1955, chap. 122, par. 34—16.

There can be little doubt that for some purposes the statutory relation which the Board of Education bears to the city of Chicago is sufficient to prevent their treatment as bodies completely separate and distinct from each other. Thus in *People ex rel. Schlaeger* v. *Jarmuth*, 398 Ill. 66, relied upon by plaintiffs, this court upheld the validity of the Municipal Employees' Annuity and Benefit Fund Act, which required the city to raise funds by taxation for the purpose of paying annuities and benefits to employees of the Board of Education. It was urged that the act was void because it required a tax to be levied by one municipality for the use and benefit of another separate and distinct municipality. In rejecting the contention we concluded that the Board of Education is a part of the municipal government of the city "to such extent" that the act did not contravene section 9 of article IX of our constitution. In justification of this result, however, it was further observed that taxes had been levied and collected under the act for more than a quarter of a century, during which time important monetary and human rights had accrued, and that such passage of time created a strong presumption against its invalidity. We do not think that the constitutional decision in the *Jarmuth case* is decisive in determining the question of construction involved here. Plaintiffs have suggested no reason for a legislative distinction between school teachers in Chicago and those elsewhere, insofar as the present requirement is concerned, nor can we perceive any.

The statute should be given a reasonable interpretation, in order that its true intent and meaning may be given effect. It must be construed in recognition of the fact that the city and the Board of Education are essentially different bodies; that each has its peculiar functions to perform, and that neither can perform the functions of the other. As we observed in *Schreiner* v. *City of Chicago,* 406 Ill. 75, "although the territory of the city and the school district is coterminous, and some of the officers perform dual duties, they are two separate organizations. The city of Chicago is a municipal corporation, and the statute likewise provides that board of education is a 'body politic and corporate.'" We conclude there is not such identity of organization as to warrant classifying teachers employed by the Board of Education as employees of a city, within the meaning of the exclusion in the present statute. We are thus brought to a consideration of the plaintiffs' constitutional objections.

It is contended the requirement in question violates Federal and State guaranties of due process of law. Under each constitutional provision the legislature is prohibited from depriving any person of "life, liberty, or property" without due process of law. It is evident from the face of such provision that before a party can properly invoke the due-process clause he must show wherein the particular law deprives him of life, liberty, or property. The section in question here prescribes the execution of an affidavit as a condition of receiving compensation from the State. In effect it sets one of the terms with which one must comply who desires to obtain or continue public employment. The United States Supreme Court has pointed out that "the loss of a particular position is not the loss of life or liberty," (*American Communications Association* v. *Douds,* 339 U.S. 382, 409, 94 L. ed. 925, 949,) and that "an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the

due process clause." (*Snowden* v. *Hughes*, 321 U.S. 1, 7, 88 L. ed. 497, 502.) There is no indication that the present statute denies compensation for services rendered prior to its effective date or impairs existing contractual rights. The parties, however, have not attempted to show wherein plaintiffs liberty or property are affected or unaffected, but have argued the cases apparently on the assumption that the due-process clause is applicable. Moreover, a careful examination of authorities relied upon respectively reveals a similar approach by the United States Supreme Court in situations factually comparable to that in the case at bar. (See *Slochower* v. *Board of Education*, 350 U.S. 551, 100 L. ed. 692; *Wieman* v. *Updegraff*, 344 U.S. 183, 97 L. ed. 216; *Adler* v. *Board of Education*, 342 U.S. 485, 96 L. ed. 517; *Garner* v. *Board of Public Works*, 341 U.S. 716, 95 L. ed. 1317.) We shall therefore proceed upon the ground that the present requirement in some way curtails liberty or takes away property rights.

While it is recognized that government has the power to exclude from public employment communists and others who advocate its violent overthrow, (See *Adler* v. *Board of Education*, 342 U.S. 485, 96 L. ed. 517,) requirements of due process are considered applicable to the means adopted to implement the power. A State may validly provide that a person who is knowingly a member of an organization which advocates the overthrow of constitutional government by unlawful means shall not be eligible for public employment. (*Adler* v. *Board of Education*, 342 U.S. 485, 96 L. ed. 517.) But a law which disqualifies on the basis of mere membership, regardless of any awareness of the organization's purpose or character, is said to be arbitrary and void. *Wieman* v. *Updegraff*, 344 U.S. 183, 97 L. ed. 216; *Chicago Housing Authority* v. *Blackman*, 4 Ill.2d 319.

Relying upon the *Wieman case*, the plaintiffs contend the affidavit is objectionable for lack of scienter. They also

urge that it falls within the holding in the *Slochower case*. We think neither argument can be sustained. As to the first, the affidavit's negation is limited to knowing membership in subversive organizations. We cannot accept plaintiffs' suggestion that the word "knowingly" refers to knowledge of whether the affiant is a member, rather than knowledge of the character of the organization. The provision must be given a reasonable, common-sense interpretation. The affiant obviously would know the fact of his own membership. As reasonably construed the affidavit negates only membership in organizations known to have the proscribed character. It does not affect persons who might have innocently formed or continued affilation with a subversive organization, unaware of its nature or purpose. The required affidavit is also to be distinguished from the statute held void in the *Slochower case*. In deciding that the claim of privilege against self-incrimination was not a sufficient ground or reason for disqualifying one from public employment the United States Supreme Court pointed out that "No consideration is given to such factors as the subject matter of the questions, remoteness of the period to which they are directed, or justification for exercise of the privilege." The situation here is quite different. The subject matter of the affidavit is clearly one upon the basis of which the State may determine the fitness of its employees, (*Adler* v. *Board of Education,* 342 U.S. 485, 96 L. ed. 517,) it is limited to present membership or affiliation, and no claim of self-incrimination is involved.

Plaintiffs further complain that there is no provision for a hearing. The argument loses sight of the nature of the requirement. The statute does not purport to designate a crime or offense for which punishment is imposed. It merely prescribes a standard of eligibility. In *Garner* v. *Board of Public Works,* 341 U.S. 716, 95 L. ed. 1317, an ordinance required every city employee to execute an affi-

davit disclosing any past or present membership in the communist party. In upholding its validity the Supreme Court pointed out that a city or State is not disabled "from inquiring of its employees as to matters that may prove relevant to their fitness and suitability for the public service. Past conduct may well relate to present fitness; past loyalty may have a reasonable relationship to present and future trust. Both are commonly inquired into in determining fitness for both high and low positions in private industry and are not less relevant in public employment. The affidavit requirement is valid." The negation required in the case at bar, being limited to present membership or affiliation, is even less subject to objection. Its content is similar to that questioned in *Gerende* v. *Board of Supervisors,* 341 U.S. 56, 95 L. ed. 745, wherein a law was summarily upheld which required, as a prerequisite to having his name appear upon the ballot, that every candidate for public office file an affidavit that he is not a person engaged in the attempt to overthrow the government by force or violence, and that he is not knowingly a member of an organization engaged in such an attempt.

An affidavit requirement much broader in scope than the present one was held valid in *American Communications Association* v. *Douds,* 339 U.S. 382, 94 L. ed. 925. That case involved the noncommunist affidavit provision contained in section 9(h) of the Labor-Management Relations Act. The section requires, as a condition of a labor union's receiving the benefit of facilities provided by the act, that each of its officers file an affidavit stating that he is not a member of or affiliated with the communist party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the government by force or other illegal methods. In a lengthy opinion the court disposed of numerous attacks on constitutional grounds, and concluded as follows (339 U.S. at 415, 94 L. ed. at 952-953): "Clearly the Con-

stitution permits the requirement of oaths by officeholders to uphold the Constitution itself. The obvious implication is that those unwilling to take such an oath are to be barred from public office. For the President, a specific oath was set forth in the Constitution itself. Art 2, § 1. And Congress has detailed an oath for other federal officers. Obviously, the Framers of the Constitution thought that the exaction of an affirmation of minimal loyalty to the Government was worth the price of whatever deprivation of individual freedom of conscience was involved. All that we need hold here is that the casting of § 9(h) into the mold of an oath does not invalidate it, if it is otherwise constitutional. We conclude that § 9(h) of the Labor-Management Relations Act, as herein construed, is compatible with the Federal Constitution and may stand." It is no objection to the present requirement that the consequences of refusal are limited to a termination of pay, and that the employment relationship as such is not expressly severed. If under its provisions an employee may continue his work but without receiving compensation, as the plaintiffs contend, the choice is that of the employee. There is nothing therein that compels him to do so. The natural result of prohibiting compensation, of course, is to terminate the employment itself. The law is obviously a reasonable means of accomplishing its purpose of eliminating communists and other subversive persons from public employment. We conclude that it does not violate the due-process clause.

In this court the plaintiffs contend that section 30b is invalid because it arbitrarily discriminates between the various political subdivisions of the State and their employees, including some and excluding others, without a reasonable basis for the classification. We find, however, that this ground of invalidity was not raised by the plaintiffs in the trial court. It is therefore not available here, and we do not pass upon the contention.

Plaintiffs assert that section 30b is an unwarranted denial of the right to speak. They fail to point out, however, the respect or way in which they consider such right to be involved here. The statute simply provides for the execution of an affidavit of fact. It does not purport to limit or restrict the right of employees to speak or assemble. The arguments and authorities relied upon are obviously not applicable to the statute questioned in this case. The claim that it constitutes a bill of attainder is likewise without any merit. Bills of attainder are legislative acts inflicting punishment on certain persons without judicial trials. No punishment is inflicted by a statute which merely prescribes standards of qualification or eligibility for public employment. *Garner* v. *Board of Public Works*, 341 U.S. 716, 95 L. ed. 1317.

It is urged that the subject of section 30b is not expressed in the title "An Act in relation to State finance," and that it therefore violates section 13 of article IV of the Illinois constitution. Section 30b prescribes a condition which must be fulfilled before public employees may receive payment from State appropriations. Its subject obviously concerns the expenditure or disbursement of State funds; and while its provisions may also result in determining the character of employees on the public payroll, the basis of such effect is a financial one. The subject of an act means the matter or thing forming the groundwork of the act, and may include many provisions which are germane to it and are such that if traced back will lead the mind to the subject as the generic head. (*Department of Public Works and Bldgs.* v. *Spanogle*, 327 Ill. 122.) In the case cited we pointed out that "An act having a single, general subject indicated in the title may contain many provisions, however diverse, if they are not inconsistent with or foreign to the subject and may be considered in furtherance of it by providing for the method and means of effectuating it." We further observed that "There

has been a general disposition to construe this constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which the provision was adopted." To render a provision in the body of a statute void as not embraced in the title, it must be one which is incongruous, or which has no proper connection with the title. (*People ex rel. Gutknecht* v. *City of Chicago,* 414 Ill. 600.) The present provision prescribes conditions under which certain payments may be made from appropriations. We cannot say it is so inconsistent with or foreign to the matter of State finances as to render it void under section 13 of article IV of our constitution.

Nor can we agree with the contention that section 30b is incomplete and amends statutes relating to civil service employment, teachers' tenure, and pay periods of State employees, without inserting such statutes at length therein. Its provisions are complete in themselves. They do not purport to deal with teachers' tenure, civil service matters, or pay periods. They simply require the filing of an affidavit before compensation may be received from State appropriations. The purpose of the constitutional provision requiring the amended section of a law to be inserted at length in the new act is to avoid the necessity of having to make reference to a prior law to determine and give meaning to an amendatory act. (*Co-ordinated Transport, Inc.* v. *Barrett,* 412 Ill. 321.) The meaning of the present section is clearly ascertainable from its provisions alone. The fact that section 30b may have an incidental effect upon various general laws in relation to State employees does not render it void. It is only where a law professes to be amendatory, or is amendatory in its nature, that the constitutional provision applies. (*People ex rel. Egan* v. *City of Chicago,* 310 Ill. 534.) As we observed in *Co-ordinated Transport, Inc.* v. *Barrett,* 412 Ill. 321, "Any

new provision of law may in some sense be said to amend and change the prior system of laws, and whenever there is an irreconcilable conflict between two acts the later one must prevail. To the extent of the conflict the later act amends the earlier one by implication, and, if the later act is not amendatory in form and perfect in itself, it is not within the prohibition of the constitution. It is not necessary, when a new act is passed, that all prior acts modified by it by implication shall be re-enacted and published at length."

We conclude that section 30b is constitutional, and that the circuit court properly dismissed the complaints. The judgments are therefore affirmed.

*Judgments affirmed.*