ROBERTA SHAPIRO *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* REGIONAL BOARD OF SCHOOL TRUSTEES OF COOK COUNTY *et al.*, Defendants-Appellees and Cross-Appellants.

First District (5th Division)   No. 82—2080

Opinion filed June 24, 1983.

398

Russell M. Pelton and Craig A. Varga, both of Peterson, Ross, Schloerb & Seidel, of Chicago, for appellants.

John C. Tucker and Jane A. McAtee, both of Jenner & Block, of Chicago, for appellee Board of Education of Community Consolidated School District No. 65.

Stuart H. Glicken and Michael I. Wexler, both of Chicago, and Fred I. Feinstein, of Skokie, for other appellees.

JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from the trial court's affirmance in an administrative review action of an order of the Regional Board of School Trustees of Cook County (the Board) dismissing for lack of jurisdiction plaintiffs' petition for detachment brought pursuant to section 7—6 of the School Code. (Ill. Rev. Stat. 1979, ch. 122, par. 7—6.) Plaintiffs contend that (1) the order dismissing their petition is void; (2) the Board's prior ruling that it had jurisdiction was final and could not be reconsidered; (3) the Board improperly (a) ruled that requirements of the Election Code relating to the form of petitions and to the challenge of voter registrations (Ill. Rev. Stat. 1979, ch. 46, pars. 28—3, 4—12) apply to a petition filed pursuant to the School Code and (b) applied these new requirements retroactively; and (4) the Board's findings of fact are against the manifest weight of the evidence. Defendants cross-appeal from an earlier order of the trial court finding that the Board's initial denial of plaintiffs' petition was against the manifest weight of the evidence. They contend that plaintiffs failed to sustain their burden of proving that the benefits of detachment clearly outweigh the detriments.

On September 5, 1979, plaintiffs filed a petition with the Board seeking detachment of certain described territory (the detachment

area) from Community Consolidated School District No. 65 (District 65), which includes all of the city of Evanston and part of the village of Skokie, and its annexation to Community Consolidated School District No. 68 (District 68), which includes portions of Skokie. The petition consisted of four pages describing the detachment area together with statements in support of detachment, and 186 pages containing 1,928 signatures. It alleges that the detachment area receives other essential community services from Skokie and enjoys a "community of interest" with Skokie because it is located entirely therein; and that the benefits of detachment to the children in the affected area and to District 68 outweigh any detriment to District 65.

District 65 objected to the jurisdictional sufficiency of the petition, and at a series of hearings held to resolve that issue contended that there were 2,858 registered voters living in the detachment area, the number listed in the official Cook County precinct election binders on the date the petition was filed. It further argued that plaintiffs needed the signatures of 1,928 registered voters in order to meet the requirements of the School Code. (Ill. Rev. Stat. 1979, ch. 122, par. 7—1.) Plaintiffs acknowledged that of the 1,928 signatures on their petition, only 1,667 were registered voters living in the detachment area, but contended that there were 2,268 voters residing therein, not 2,858, and they therefore needed only 1,512 signatures.

The testimony of several witnesses established that plaintiffs' lower figure was arrived at in the following manner: working from an April 1979 official precinct list showing 2,867 registered voters in the detachment area, circulators visited or called each address listed thereon and asked about each registered voter shown as residing at that address; if informed that the person in question was dead or had moved, the circulators crossed the name off the list; 597 names were removed by this process. The witnesses admitted that they did not have personal knowledge whether the voters in question had in fact died or moved, and for the most part they could not identify the person who provided the information. District 65 was not allowed to cross-examine the circulators with regard to all of the voters excluded after the Board determined that the testimony concerning each of the 597 names would be similar. However, District 65 filed its own survey purporting to show that 93 voters excluded by plaintiffs were in fact registered voters residing in the detachment area when the petition was filed, and that 35 registered voters were not on the list used by plaintiffs. The Board did not allow testimony with regard to this survey, and later stated that it had not even looked at that evidence in making its initial determination on jurisdiction. Five circulators fur-

ther testified that, collectively, they obtained 80% of the signatures. Registered voters were shown the four-page detachment proposal, and its purpose was explained to them before they were asked to sign. If all of the registered voters residing at a particular address were not at home when the circulators stopped, a petition was left to be signed and mailed. These mail-in pages, which garnered 158 signatures, contained a short statement of the purpose of the petition but did not describe the detachment area.

During the course of these hearings, the Board eliminated some signatures which it determined were duplicates, illegible, or signed by proxy. It then found that the petition contained 1,565 valid signatures[1] as of September 5, 1979, accepted plaintiffs' contention that there were 2,268 registered voters residing in the detachment area on that date, and concluded that it had jurisdiction to consider the merits of the petition. Defendants' contention that the form of the petition did not meet the requirements of section 28—3 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 28—3) was rejected after the Board received an opinion from the assistant legal advisor of the State Board of Education that the Election Code was inapplicable to detachment proceedings under the School Code.

At a separate hearing on the merits of the petition, plaintiffs presented several witnesses in support of detachment. After District 65 had presented only one of its witnesses, the Board concluded that it had heard sufficient evidence, voted to deny the petition, and terminated the hearing. Plaintiffs appealed, and the trial court found that the Board's decision was against the manifest weight of the evidence, reversed its order, and remanded the action for further proceedings. The trial court further ordered that "[i]n the event the board shall elect to reconsider its prior rulings on the question of jurisdiction, the board shall consider new evidence together with the evidence already submitted on this question."

On remand, the Board did elect to reconsider its rulings with regard to jurisdiction and asked each side to submit proposed findings of fact and conclusions of law on that issue prior to further hearings. On October 5, 1981, the Board heard testimony on District 65's survey of voters previously filed with the Board but not considered, and evidence that one petitioner did not see the detachment proposal prior to signing the petition, and that the purpose of the petition was misrepresented to her. Plaintiffs then presented evidence that 41 names

---

[1]The Board refused to accept the mail-in petitions but did allow 85 subsequent acknowledgments of those signatures to be counted in determining its jurisdiction.

previously stricken from the petition as not being registered voters were in fact registered, and the testimony of a graphologist who disputed the Board's prior determination that seven signatures were signed by proxy.

Based on the foregoing evidence as well as evidence presented at prior hearings, the Board determined that it did not have jurisdiction of this matter and dismissed the petition. Its findings of fact and conclusions of law issued subsequent to that decision set forth four distinct bases for the ruling. The Board concluded that, since the School Code was silent on the question of the form of a valid petition and the means of determining the number of registered voters residing in the detachment area, the applicable standards were those contained in the Election Code. It determined that the petition presented was not in the form required by the Election Code, and that the survey conducted by plaintiffs was not the proper method of challenging and removing names from the official record of registered voters. It further decided that even if the Election Code did not otherwise apply, the Board should adopt the requirements thereof as its own standards in determining the validity of the petition. Finally, the Board ruled that if plaintiffs' survey were allowed for purposes of reducing the number of registered voters, then defendants' survey must likewise be allowed to add registered voters to that list. The trial court affirmed the Board's order, and this appeal followed.

OPINION

■■ Plaintiffs first contend that the Board was required to state its findings of fact and conclusions of law "on the record" as it did during prior hearings, and that its failure to do so renders the order void. They maintain that since the record does not reflect the Board's reasoning, we must presume that its decision was arbitrary and capricious.

Plaintiffs do not cite, nor has our own research discovered, any case or statute supporting their position. While it is true that an agency's findings must be based on evidence of record and uninfluenced by considerations *dehors* the record (*Wheeler v. County Board of School Trustees* (1965), 62 Ill. App. 2d 467, 210 N.E.2d 609), there appears to be no rule that the findings themselves must be made "on the record," *i.e.*, during the course of the hearing. Furthermore, we believe that adoption of such a rule would be contrary to the function of an agency acting, as here, in a quasi-judicial capacity. Particularly where the facts are complex and the evidence extensive and contradictory, the agency must be afforded an opportunity to deliberate and

consider all of the evidence before making its findings. We realize that, in the instant case, the Board made several findings on the record at prior hearings; however, we also note that these "instant rulings" on factual matters may have been the cause of its initial failure to consider the evidence of defendants' survey. If the findings are to be based on the record, they should be based on the entire record, not just on the last-heard evidence.

■ It appears to us that the real issue here is not whether findings must be made on the record, but whether the Board's action must be presumed arbitrary and capricious because it issued its decision before it made any express findings of fact and conclusions of law. At the close of evidence, the Board heard arguments of counsel and then immediately voted to dismiss the petition. Plaintiffs theorize that the decision therefore must have been arbitrary. The Board apparently makes a practice of ruling before making any findings, since the same procedure was followed in issuing its prior order denying plaintiffs' petition. For the reasons noted above, we agree that this practice is ill-advised. However, we have perused the record with regard to the order dismissing the petition, and it indicates that the Board had reviewed the transcripts of the earlier hearings as well as proposed findings of fact and conclusions of law from each side setting forth their respective positions on the issue of jurisdiction. The testimony at the final hearing was neither extensive nor complicated, and given the fact that the Board had an opportunity to thoroughly review its position, the evidence, and the arguments of the parties, we do not believe that, in the instant case, its decision was unreasoned or arbitrary.

■ ■ Plaintiffs also argue that the order is void because the Board adopted, almost without change, defendants' proposed findings and conclusions. In support thereof, they cite several Federal cases involving similar practices by district court judges and argue that rules established therein should be adopted in reviewing agency decisions. However, the cases relied upon clearly hold that the adoption of findings and conclusions authored by the prevailing party does not require reversal of a decision. In *United States v. El Paso Natural Gas Co.* (1964), 376 U.S. 651, 656, 12 L. Ed. 2d 12, 17, 84 S. Ct. 1044, 1047, the trial court had adopted without change the prevailing party's proposed findings of fact and conclusions of law. The Supreme Court noted that "[t]hose findings, though not the product of the workings of the district judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence." (See also *Loctite Corp. v. Fel-Pro, Inc.* (7th Cir. 1981), 667 F.2d 577.)

While several courts, as plaintiffs point out, have expressed disapproval of this practice (see, *e.g., Flowers v. Crouch-Walker Corp.* (7th Cir. 1977), 552 F.2d 1277, 1284), others acknowledge that it is a common and useful practice in complicated cases (see *Lektro-Vend Corp. v. Vendo Co.* (7th Cir. 1981), 660 F.2d 255, 263, *cert. denied* (1982), 455 U.S. 921, 71 L. Ed. 2d 461, 102 S. Ct. 1277). Moreover, contrary to plaintiffs' assertion, the practice does not necessitate imposing a stricter standard of review. In *Norfolk & Western Ry. Co. v. B. I. Holser & Co.* (7th Cir. 1980), 629 F.2d 486, the court recognized that the trial court's findings of fact "[did] not reflect the original products of a disinterested mind" (629 F.2d 486, 489); nevertheless, it adhered to the usual standard applied in reviewing the trial court's findings of fact, a standard analogous to the manifest weight standard adopted by our courts in reviewing an agency's findings of fact. (See also *Flowers v. Crouch-Walker Corp.* (7th Cir. 1977), 552 F.2d 1277.) It appears that the only effect of adopting one party's findings and conclusions is that, while the findings are given the same deference as those authored by the trial court, the reviewing court will scrutinize the record with greater care in determining that the findings are supported. (See *United States v. El Paso Natural Gas Co.* (1964), 376 U.S. 651, 12 L. Ed. 2d 12, 84 S. Ct. 1044.) These cases do not support a conclusion that the findings are entitled to no deference and that the reviewing court must therefore engage in a trial *de novo* of the factual issues, as plaintiffs apparently suggest that we do here.

■ Plaintiffs next assert that having once determined that it had jurisdiction, the Board could not subsequently reconsider jurisdictional issues and reverse its earlier decision. They posit that to hold otherwise allows opponents of such petitions an unfair advantage, since they have an opportunity to continually challenge jurisdiction by presenting evidence of the withdrawal of signatures from the petition. In support of their arguments, plaintiffs cite *Board of Education v. Regional Board of School Trustees* (1980), 82 Ill. App. 3d 1067, 403 N.E.2d 578, where we held that withdrawals, reinstatements, and additions of signatures are allowed only until such time as the Board acts on a petition. In the instant case, plaintiffs argue, the Board had acted on the petition by denying it in its prior order; therefore, any further inquiry into jurisdiction was foreclosed. We disagree. *Board of Education v. Regional Board of School Trustees* is concerned with subsequent action involving a petition which, as originally presented, was sufficient to sustain the Board's jurisdiction. That case makes it clear that initially there must be substantial compliance with jurisdictional requirements. (82 Ill. App. 3d 1067, 1071, 403 N.E.2d 578, 581.)

Here, the Board was not concerned with subsequent withdrawals from and additions to an otherwise valid petition; rather, it was determining whether the petition was jurisdictionally sufficient as originally presented, a question totally separate from the subsequent changes at issue in *Board of Education v. Regional Board of School Trustees.*

We believe that the Board did have the authority to reconsider its jurisdiction in this matter, regardless of any authorization or lack thereof by the trial court on remand. A petition in compliance with the statute is a prerequisite to the Board's jurisdiction to act (*Bourland v. Snyder* (1906), 224 Ill. 478, 79 N.E. 568), and where the Board acts upon a defective petition, its order is void (*Muddy Grade School District No. 40 v. Raleigh Grade School District No. 34* (1964), 53 Ill. App. 2d 223, 202 N.E.2d 653). Therefore, it stands to reason that the Board, like any other agency, may inquire into its jurisdiction to act at any time, at the request of any party or upon its own motion, since it simply has no power to act in the absence of that jurisdiction. See *Michelson v. Industrial Com.* (1941), 375 Ill. 462, 31 N.E.2d 940; *People ex rel. Petersen v. Turner Co.* (1976), 37 Ill. App. 3d 450, 346 N.E.2d 102.

■ Plaintiffs next contend that the Board improperly applied Election Code standards in determining that the form of the petition was insufficient to establish its jurisdiction and in finding that their survey of voters was not the proper method of challenging the official records and removing a name therefrom. Defendants maintain that the Election Code and the School Code must be read *in pari materia*; therefore, they assert, since the School Code is silent with regard to the form of petitions and the means of removing voters from the register, the corresponding sections of the Election Code must be applied.

A number of cases cited by defendants hold that statutes which concern the same subject matter must be read in harmony with each other; therefore, where the School Code is silent in an important respect with regard to a matter also covered by the Election Code, provisions from the Election Code must be applied to the proceedings, so long as there is no inconsistency with the purposes of those statutes. For the most part, as plaintiffs correctly note, these cases have involved elections under the School Code where the applicability of the Election Code was readily apparent. (See, *e.g., Scofield v. Board of Education* (1952), 411 Ill. 11, 103 N.E.2d 640; *McRell v. Jackson* (1977), 49 Ill. App. 3d 86, 363 N.E.2d 940; *Tremper v. Board of Education* (1971), 3 Ill. App. 3d 264, 278 N.E.2d 451.) However, courts

have also looked to Election Code voter registration and residency requirements, albeit without expressly referring to the Election Code, in determining whether two-thirds of the registered voters in a given area had signed a petition for detachment (*Stein v. County Board of School Trustees* (1968), 40 Ill. 2d 477, 240 N.E.2d 668) or a petition for the creation of a new school district (*People ex rel. Larson v. Gordon* (1918), 283 Ill. 366, 119 N.E. 318). These cases do not appear to be based on a reading of the Election Code *in pari materia* with the School Code; instead, the court seems to be applying the only existing standards for determining who is a registered voter residing in the detachment area, since then, as now, only the Election Code governed registration or residency requirements for voters.

Here, as one basis for its ruling, the Board applied section 28—3 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 28—3),[2] which prescribes the form and content of petitions for the submission of public questions to a referendum, in determining that the petition in question was invalid. Under section 28—3, each page of a petition must contain a statement of the proposed question and the sworn statement of the circulator that each signator is a registered voter and signed in his presence. When submitted, the pages must be of uniform size and securely bound together. The petition here met none of these requirements. However, as plaintiffs correctly note, referenda and detachment proceedings are not "the same matter." While defendants' position is that the similarity between the two is sufficient to require application of the Election Code, they cite no cases wherein statutes involving arguably similar matter were construed *in pari materia*, in effect expanding the subject matter of one statute by analogy. In each of the above cases, provisions of the Election Code were applied because they governed the exact matter in question. We do not agree that plaintiffs had a duty here to browse through the Election Code and decide if any of the numerous provisions prescribing the form and contents of the various petitions were "close enough" to a petition for detachment to mandate their applicability, particularly where there was an established practice of the Board upon which they could rely. Of course, the Board may adopt these standards in order to give petitioners some uniform guidance on the proper form of a petition, and we urge that it do so. We note that the standards would have avoided

---

[2]The order also refers to section 7—10 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 7—10), which governs petitions for nomination to public office. On appeal, however, defendants have not argued the applicability of this provision. For the reasons noted above with regard to section 28—3, we do not find that this provision is applicable to detachment proceedings brought pursuant to the School Code.

many of the evidentiary problems which plagued the hearings on this petition.

■ The Board also applied section 4—12 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 4—12) in ruling on the number of registered voters residing in the detachment area. It provides in relevant part that a registered voter may be challenged by the sworn, written statement of a registered voter made on personal knowledge that the challenged voter is not a resident of the precinct in which he is registered. Before the challenged voter may be removed from the official register, he must be given notice of the application and an opportunity to refute it. As noted above, our courts have long looked to the Election Code's registration and residency requirements in determining who may be considered a registered voter residing in the detachment area. Section 7—1 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 7—1) requires that the petition contain the signatures of two-thirds of the registered voters residing in the detachment area, but nowhere defines those terms. The Election Code concerns the same subject matter; *i.e.*, registration of voters and their residency. Therefore, it is our view that, to this extent, the Election Code has been and must continue to be read *in pari materia* with the School Code. We believe that this was the legislative intent. The School Code could properly have provided for a petition signed by residents of the detachment area, since all residents are affected to some extent by a detachment proceeding regardless of whether they are registered voters. Instead, the legislature chose to limit qualified petitioners to those who are registered voters, and that can be determined only by reference to the Election Code.

The problem here is that plaintiffs attempt to read "registered voter" and "residing in the detachment area" as two separate and unrelated tests. They then argue that they are only concerned with the latter prong of the test, and assert that the Election Code is inapplicable thereto. However, the phrase "residing in the detachment area" merely defines which of the millions of the registered voters in this State may sign the petition. To become a registered voter, a United States citizen of 18 years of age or more must reside in, *i.e.*, have a permanent abode, within the election district for 30 days prior to an election and register as provided in the Election Code. (Ill. Rev. Stat. 1979, ch. 46, pars. 3—1, 3—2, 4—10.) The official registry of those voters is kept by the county clerk of each county. (Ill. Rev. Stat. 1979, ch. 46, par. 4—20.) In their survey of voters, plaintiffs sought to remove names from this official register under the guise of determining who "resided in" the detachment area. However, that official reg-

ister tells them who resides in the area, because residency is one of the requirements of registration. If plaintiffs wish to challenge that official registry, they must do so in the manner provided by statute, *i.e.,* section 4—12 of the Election Code.

We further note that even if this provision were not previously applicable, the Board would be compelled to adopt the same or similar standards. Despite the assertions of counsel before the Board, the type of hearsay evidence upon which this survey was based is not admissible in an administrative proceeding. (*Goranson v. Department of Registration & Education* (1980), 92 Ill. App. 3d 496, 415 N.E.2d 1249.) It is not true, as the Board was repeatedly informed,[3] that the rules of evidence do not apply in an administrative proceeding; the rule is that the failure to observe technical rules of evidence is not grounds for reversal of the Board's decision. (Ill. Rev. Stat. 1981, ch. 110, par. 3—111(b).) However, the rule against hearsay is basic and fundamental, not merely technical. (*Jamison v. Weaver* (1975), 30 Ill. App. 3d 389, 332 N.E.2d 563.) Where hearsay evidence appears in the record, it may not be considered in reaching a decision, and any factual determination based on hearsay and unsupported by other competent evidence in the record must be reversed. (*La Grange Bank #1713 v. Du Page County Board of Review* (1979), 79 Ill. App. 3d 474, 398 N.E.2d 992; *Russell v. License Appeal Com.* (1971), 133 Ill. App. 2d 594, 273 N.E.2d 650.) Therefore, the Board acted properly in disregarding plaintiffs' survey in making its determination of jurisdiction, regardless of the applicability of the Election Code. The only testimony supporting exclusion of those names from the list of registered voters was based entirely on hearsay, and any finding of jurisdiction based on that evidence would be reversed. The danger of accepting such evidence is readily apparent here, where a subsequent survey showed that as many as 93 voters may have been erroneously removed from the official register.

Plaintiffs further maintain that even if we find sections 28—3 and 4—12 of the Election Code applicable, they should not be applied retroactively, arguing that to do so denies them due process of law. However, they have not demonstrated in what way application of these statutes would violate their constitutional rights. General allegations of a deprivation of due process are insufficient to raise the issue (*Janson v. Pollution Control Board* (1979), 69 Ill. App. 3d 324, 387

---

[3]It appears from the record that the Board was misinformed on several evidentiary matters during the course of the hearing. We note in particular, for the Board's future reference, that counsel for petitioners and opponents may not give testimony.

N.E.2d 404); plaintiffs must show how application of these particular rules deprive them of life, liberty, or property (*Pickus v. Board of Education* (1956), 9 Ill. 2d 599, 138 N.E.2d 532). Here, the only specific allegation made is that retroactive application of these provisions denies plaintiffs the right to petition guaranteed by the Illinois Constitution. (Ill. Const. 1970, art. I, sec. 5.) Assuming *arguendo* that the petition in question is within the contemplation of the constitution, plaintiffs have not shown how that right has been violated. The Board's order in no way precludes presentation of a proper petition containing the requisite number of signatures.

■■ Plaintiffs further argue that even if there is no constitutionally protected right involved, an agency's rules and regulations may not be applied retroactively if the result will be unreasonable or oppressive. They maintain that, in the instant case, their right to present another petition is an empty one, since the time and expense involved is so burdensome that a second effort is unlikely to occur; or, if it is undertaken, to be successful. This burden, they assert, is unreasonable and oppressive.

In determining whether an agency rule or regulation may be applied retroactively, the test to be applied is whether the case is one of first impression, whether the regulation represents an abrupt departure from well-established practice, the extent to which plaintiffs relied on the former regulation, and the degree of burden imposed on the party against whom application is sought. (*Cartwright v. Illinois Civil Service Com.* (1980), 80 Ill. App. 3d 787, 400 N.E.2d 581.) However, even where inequities appear in the retroactive application of a rule or regulation, we must also consider whether there are significant statutory interests involved which counterbalance any hardship to the complaining party. *Gonzales-Blanco v. Clayton* (1982), 110 Ill. App. 3d 197, 441 N.E.2d 1308.

■■ Because of our different conclusions on the basis for applying these two statutory provisions and the different interest served by each, we must consider them separately in determining the propriety of their retroactive application. With regard to section 3—28 of the Election Code, governing the form of petitions, we have found that provision inapplicable but believe that the Board may adopt the standards found therein. However, it is our view that it should not be applied retroactively. It is evident from the comments of Board members during the course of this proceeding that any form of petition, including petitions similar to the one at issue here, have been accepted in the past. Therefore, plaintiffs were relying on past practice in preparing this petition, and application of these new standards

would represent an abrupt departure from that prior practice. Furthermore, we agree that the burden on plaintiffs is a real one and not outweighed by any regulatory interest here. Application of these standards would eliminate many of the evidentiary problems encountered here; however, testimony that signators saw the proposal and signed in the presence of circulators was presented under oath and based on personal knowledge. Since this is the information sought by the regulation, we believe that plaintiffs have substantially complied therewith. The requirement that the pages be of uniform size and securely bound is a matter of administrative convenience, clearly a technical requirement which would not justify the burden imposed on plaintiffs here.

■■ With regard to application of section 4—12 of the Election Code, we note initially that its application is not retroactive, since provisions of the Election Code have always been applicable to a determination of who is a registered voter. The mere fact that the Board has never before had occasion to apply this particular provision does not make its application retroactive. Moreover, even assuming *arguendo* that this is a new rule or regulation, it is our view that retroactive application would be justified under the *Cartwright* test. The record does not disclose any prior rule or regulation of the Board upon which plaintiffs relied in conducting their survey. Rather, it appears that plaintiffs chose a method of proceeding which they unilaterally decided was reasonable. They have relied, then, on their own erroneous interpretation of the law, an interpretation which the Board took no part in formulating. We agree that the burden on plaintiffs is difficult, but that burden is not related to any prior action of the Board. Moreover, we believe that the statutory interest here clearly outweighs any burden on plaintiffs in having to undertake a second, properly conducted petition effort. The provision in question was designed to protect the right to vote by affording registered voters minimal due process before disenfranchisement. When applied to a detachment proceeding, it protects opponents of detachment who can defeat a petition drive only by remaining on the list of registered voters. They have just as much right to express their opinion by refusing to sign the petition as plaintiffs have to voice their support of the proposal by signing. If their names are erroneously excluded from the list of registered voters, the effect is to deny them a right to express that negative opinion.

■■ In light of the above, we conclude that the Board properly ruled that it did not have jurisdiction to consider the merits of this

petition because plaintiffs' survey was not the proper method of challenging and removing registered voters from the official register. The following findings were made with regard to the number of signatures required: there were 2,858 registered voters in the official Cook County precinct election binders on September 5, 1979; plaintiffs' attempt to challenge that number did not comply with section 4—12 of the Election Code and could not serve to exclude any voters from that official register; plaintiffs therefore needed the signatures of 1,906 voters in order to present a valid petition for detachment; there were at most 1,565 valid signatures on the petition presented. Plaintiffs contend that all of the Board's findings, including the above, are contrary to the manifest weight of the evidence. However, they do not cite to any evidence in the record which refutes these findings. Furthermore, mindful of the need to scrutinize the record with care when an agency adopts findings of fact authored by the prevailing party, we have searched the record and determined that there is substantial support for the above findings; therefore, we conclude that they are not against the manifest weight of the evidence.

For the reasons stated, the order of the trial court affirming the Board's decision is affirmed. Because of our disposition of plaintiffs' appeal, we need not reach defendants' cross-appeal.

Affirmed.

WILSON, P.J., and LORENZ, J., concur.