THE PEOPLE *ex rel.* Ben Bodecker *et al.,* Appellants, *vs.*
VERLE KRAMER *et al.,* Appellees.

*Opinion filed September 18, 1947.*

SAMUEL JOSEPH NAYLOR, State's Attorney, of Carthage, MAX L. WEINBERG, of Quincy, and HARRIS & HARRIS, of Macomb, for appellants.

SCOFIELD, BELL & BELL, and CLIFTON J. O'HARRA, both of Carthage, for appellees.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

The State's Attorney of Hancock county, on the relation of Ben Bodecker *et al.,* filed a complaint in *quo warranto* in the circuit court of said county asking that Verle Kramer, Harold Humke, Donald Kerr, Henry Scheuermann and Luther Johnson show by what warrant and authority they exercised the powers of members of the board of education of Community High School District

No. 310 of said county. A general allegation in defendants' answer shows that the school district was organized and defendants were elected as members of the board of education of such district pursuant to the provisions of sections 10-9, 10-10, 10-11, 10-12, and 10-13 of the School Code. (Ill. Rev. Stat. 1945, chap. 122, pars. 10-9 to 10-13.) The various steps taken leading to the organization of the school district and the election of defendants as members of its board of education were fully set forth in defendants' answer. Plaintiffs' motion to strike the answer was overruled. Thereupon plaintiffs elected to stand by their motion and a judgment was entered quashing the writ and determining that the district was lawfully organized and that defendants were the duly elected members of the board of education of such district and had full warrant and authority to exercise the powers of its board of education.

That part of the proceedings which plaintiffs claim is so irregular as to invalidate the organization of the district is based on the following facts. On August 6, 1945, a petition for the organization of a community high school district out of territory located in the vicinity of Lima in Adams County was presented to the county superintendent of schools of that county. All the territorial area of the proposed district was in Adams county except fifteen sections located in Rocky Run township in Hancock county. On August 10, 1945, a petition for the organization of a community high school district out of lands located in the vicinity of Warsaw in Hancock county was presented to the county superintendent of schools of that county. The fifteen sections of land located in Rocky Run township which had been included in the Adams county petition were also included in the petition filed in Hancock county. A third petition, the one which initiated the organization of the district involved in this case, was filed with the county superintendent of schools of Hancock county on

August 23, 1945. The latter petition proposed the organization of a high school district out of the same territorial area described in the petition filed August 10, except that the fifteen sections which had in the first instance been included in the Adams county petition, and later in the petition of August 10, were omitted from this petition.

Before the petition of August 23 was filed with the county superintendent of schools, a move was made which was evidently intended to destroy the validity of the petition filed August 10. If the action taken nullified the petition of August 10, then the petition which supports the organization of the present school district No. 310 would not be subject to the criticism that a petition bearing the requisite number of signers covering the same area was already pending before the county superintendent of schools when the election for the organization of the community school district was called. The petition of August 10 was subscribed by 118 subscribers. Section 10-9 of the School Code requires that the petition be signed by at least 100 legal voters. On August 23, before the petition of that date was filed, twenty of the voters who had subscribed the petition of August 10 filed their written request with the county superintendent of schools of Hancock county for leave to withdraw their names from the petition. Such officer permitted the withdrawals and in about twenty minutes after such action was taken, he received the petition on which the organization of the district involved here is based. The propriety of the county superintendent of schools granting such withdrawals is the only question presented on this appeal. Plaintiffs claim that the request for withdrawals was presented after the county superintendent of schools had acted on the August 10 petition and that therefore it was improper for such officer to permit the withdrawals and proceed under the petition of August 23.

The same day that the county superintendent of schools received the request for withdrawal of the names of twenty

of the subscribers of the August 10 petition, he transmitted such written request to the State Superintendent of Public Instruction and at the same time gave the State Superintendent notice of the filing of the petition of August 23 by sending the State Superintendent a copy of such petition. The notice of withdrawal which the county superintendent sent to the Superintendent of Public Instruction shows that sometime prior to August 23 the county superintendent had transmitted the August 10 petition or notice thereof to the State Superintendent of Public Instruction. As will be noted, the action of the county superintendent of schools in sending notice to the Superintendent of Public Instruction was intended to meet the requirements of section 10-13.

The law is well settled that voluntary subscribers to a petition, such as the one on which the organization of this district was initiated, have the right to withdraw their names from such petition at any time before the petition is finally acted upon. *Heppe* v. *Mooberry*, 350 Ill. 641; *People* v. *Drennan*, 307 Ill. 482; *Malcomson* v. *Strong*, 245 Ill. 166; *Mack* v. *Polecat Drainage District*, 216 Ill. 56; *Kinsloe* v. *Pogue*, 213 Ill. 302; *Theurer* v. *People*, 211 Ill. 296; *Littell* v. *Board of Supervisors*, 198 Ill. 205.

There is no disagreement between counsel on the general propositions of law as stated but they differ as to what constitutes the final action after which there may not be any more withdrawals of signatures. Plaintiffs contend such final action is found in the act of the county superintendent of schools in receiving the petition, filing the same and in his examination of it preparatory to transmitting notice of the petition to the State Superintendent of Public Instruction as required by section 10-13. The duties of the county superintendent of schools in reference to a petition of this character are very limited until such time as he has received a report from the State Superintendent of Public Instruction. Section 10-9 directs that upon receipt of the petition signed by 100 or more voters

residing in any contiguous and compact territory having a population of not less than 1500 persons and an equalized assessed value of not less than $1,000,000, the county superintendent of schools shall call an election, subject, however, that no order for an election shall issue until there has been compliance with section 10-13.

Section 10-13 provides that when a petition for the organization of a community high school district has been filed with the county superintendent of schools, such superintendent shall promptly transmit a notice of the petition to the Superintendent of Public Instruction. Further provisions of the statute prescribe the duties of the State Superintendent of Public Instruction in reference to making a report on the proposition to be proposed in such petition. He determines whether the territory proposed to be organized into a community high school district is compact and contiguous. If it does not meet such requirement, then he gives notice to the county superintendent of schools of such finding, setting forth in his report a brief statement of the reasons for his decision. Upon receipt of such notice, the county superintendent is required to cause a copy of the same to be published in a newspaper of general circulation in the territory of the proposed district. The statute commands that on such a finding by the Superintendent of Public Instruction no election shall be held or further proceedings had on the proposal to establish a high school district out of the territory described in the petition. If, on the other hand, the State Superintendent finds that the territory is compact and contiguous, he makes a report of such finding to the county superintendent from whom the petition had been received. The statute prescribes that the Superintendent of Public Instruction include certain matters in his report. In *People* v. *Frazier,* 386 Ill. 620, we held that these requirements were mandatory. On receiving such report the county superintendent of schools may call an election, but

he is required to publish the report of the Superintendent of Public Instruction.

There are certain preliminary examinations which a county superintendent of schools is required to make of a petition presented to him before transmitting notice of the petition to the Superintendent of Public Instruction but it is not that final action which this court has recognized as being necessary to close the door against signers withdrawing their names from the petition.

In *Littell* v. *Board of Supervisors,* 198 Ill. 205, a petition for the creation of a new township was filed with the county board at its March session in 1901. The petition was signed by 227 legal voters. On the presentation of the petition, the board ordered the notices posted and published as required by statute and fixed the June session as the time for final hearing. On June 10, 1901, seventy-seven of the voters who had signed the original petition asked that their names be stricken therefrom. On June 12, fifty of the seventy-seven voters repudiated their former acts of withdrawal of signatures and asked that their names remain on the original petition. At the September session of the county board, the prayer of the petition was denied. In an action for a writ of *mandamus* a question was presented as to the withdrawal of the names of the signers of the petition. It was a case of first impression. It was there said: "Our examination of the decisions cited by counsel on either side from other courts on analogous statutes has led us to the conclusion that the act of signing such petitions is not an irrevocable act, and that it may be revoked at any time before the jurisdiction of the body authorized to act has been determined by it." And it was further said: "In this case the board of supervisors did not determine the sufficiency of the petition and the requisite notice until June 10, 1901. * * * No final action was taken by the board until the following September, at which time, under the foregoing authorities, a petition signed by three-

fourths of the legal voters of the proposed new town was not before it, and therefore it properly denied the prayer. * * * Each petitioner acts on his individual responsibility, and if he should change his mind on the question whether a new town would better serve the convenience of the inhabitants residing therein or if he should be induced to sign it under a misapprehension or through undue influence, he ought to have the right to correct his mistake, if he does so before the rights of others have attached by the final action on the part of the board."

In *Mack v. Polecat Drainage District*, 216 Ill. 56, a petition had been filed in a court of record for the organization of a drainage district. Notice had been given of the hearing and on the date fixed a number of the signers withdrew their names. It was said: "Until these facts [jurisdictional] had all been determined the court did not acquire general jurisdiction of the case, and before any of them had been heard, five of the petitioners filed a written statement withdrawing their names, which we think they had a right to do."

In *People v. Drennan*, 307 Ill. 482, a petition had been filed for the organization of a community high school district. An election was ordered and the proposition of organizing a district was approved by the voters. Thereafter litigation arose in which it was held that the election was void. After such decision was made, some of the petitioners who signed the petition for the organization of the district withdrew their names therefrom. This court sustained their right of withdrawal. We said: "The petition for the organization of that district at the time of the withdrawals therefrom had virtually the same standing as it would have had had no election been called, and the signers of that petition had the legal right to withdraw therefrom at any time before a second election was called to vote upon its organization. The law is well settled that a petitioner can withdraw his name from a voluntary peti-

tion at any time before action is taken thereon. There had been no legal action taken on this petition and therefore it was proper to allow the names to be withdrawn."

In view of the application of the principle in the cases referred to, it is clear that the acts of the county superintendent of schools in reference to transmitting notice of the petition of August 10 to the Superintendent of Public Instruction did not prevent signers of that petition from withdrawing their names. No final action, such as is contemplated in the application of the principle in the several cases cited, had occurred.

The judgment of the circuit court was correct and is affirmed.

*Judgment affirmed.*