Ottawa Township High School District No. 140 of La Salle County, Illinois, et al., Plaintiffs-Appellants, v. County Board of School Trustees of LaSalle County, Illinois, et al., Defendants-Appellees.

Gen. No. 68–65.

Third District.

March 5, 1969.

Berry & O'Conor, of Ottawa, for appellants.

John A. McNamara, of Marseilles, for appellees.

ALLOY, J.

This is an appeal from an order of the Circuit Court of LaSalle County affirming an order granting detachment of certain territory from Ottawa Township High School District No. 140 and Seneca School District No. 170. The County Board of School Trustees of LaSalle

County ordered the detachment of such territory and its annexation to Marseilles School District No. 155. Administrative review of such order of the school trustees was sought in the Circuit Court of LaSalle County which affirmed the order of the school trustees.

On appeal in this Court, Ottawa Township High School District No. 140 asserts that there is no substantial evidence in the record upon which the County Board of School Trustees could have based their decision and, upon which the Circuit Court of LaSalle County could have affirmed it. The appellant High School District also contends that there has been no compliance with the provisions of the School Code with respect to the evidence to be considered in detachment proceedings, and that the decision ordering detachment as well as the order of the Circuit Court affirming such detachment are contrary to the manifest weight of the evidence. Particular emphasis is placed by appellant on the section of the School Code (c 122, 1967 Ill Rev Stats, par 7–6) which provides that the County Board of School Trustees shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, and shall take into consideration the division of funds and assets which will result from the change of boundaries and which determine whether it is to the best interest of the schools of the area and the educational welfare of the pupils that such changes in boundary be granted.

The record in the cause before us indicates that after the ex-officio secretary of the board had submitted a map showing the districts and territory involved and the district contiguous and adjacent thereto, and, likewise, after the County Board of School Trustees had seen a report of the financial and educational conditions involved and the probable effect of the proposed changes

441

and as to the school needs and conditions of the particular territory involved and as to the ability of the affected districts to meet the standards of recognition prescribed by the Superintendent of Public Instruction, such report was made a part of the record (Long v. County Board of School Trustees of Morgan County, 15 Ill App2d 162, 145 NE2d 741). Thereafter, evidence was presented through witnesses heard in the cause on behalf of petitioners. No evidence was presented on part of defendant.

The first witness to testify, Donald M. Chase, testified that his son would be a freshman in high school that year and that he resided approximately 1½ miles from Marseilles. He stated that the year before the boy had traveled approximately 9 or 10 miles by bus to Seneca grade school and that if he were required to go to Ottawa High School the boy would be required to walk about a mile and a tenth to meet a bus and then go by bus for a distance of approximately 9 miles. The witness testified that it would be much more convenient for the boy to attend Marseilles High School and, also, that he was satisfied that the educational facilities would at least be equal to that furnished at Ottawa. He emphasized that the Marseilles facilities would be beneficial to him and the boy because the boy would be closer to home, would have better supervision, also that he would be able to participate more in school activities and even sports, if he so desired. He also stated that his son knew all of the children involved and the teachers and identified with Marseilles and had relatives in the town. He was not concerned that Marseilles did not furnish transportation since the child could ride to school with his mother who taught in the Marseilles system. The witness testified that he was familiar with the curriculum offered by the two schools and was satisfied that Marseilles had an excellent school. He also stated his wife, as school teacher in the Marseilles' school system, was completely advised

442

as to the two systems and she, too, preferred the Marseilles system.

Ernest Lowery, one of the petitioners, had a child who was attending school in Marseilles at the time he testified, and also had a 3½ year old who would soon be going to kindergarten and he desired that the child attend Marseilles. The witness testified he had relatives in Marseilles and was satisfied that the educational facilities offered by Marseilles were either equal to or better than that offered at Seneca or Ottawa. He also testified that in addition to desiring that his child attend Marseilles, he worked in Marseilles, did all of his business in that town, and had occasion to come to town two or three times a day every single day.

Another petitioner, Robert Simpson, testified that he had a child who would begin kindergarten in the fall and that he had previously been a resident of Marseilles for many years and was familiar with all the schools—Marseilles, Seneca and Ottawa. He stated that he desired that his child attend Marseilles and felt that the school system could benefit him educationally as much or more than the Seneca grade or Ottawa High School. He pointed out that if he were required to travel to Seneca he would travel approximately 9 or 10 miles one way by bus and then would be required to go and pick the child up since kindergarten would only be for half a day and he had no one to care for the child in Seneca, although he did have relatives in Marseilles.

Another witness, Earle Corley, testified that as president of the Marseilles District No. 155, his district was happy to have the people annex to Marseilles; that he was confident that the quality of education in the Marseilles District was equal to the quality of education anywhere in the State. He also stated that the area of the petitioners is readily identified with Marseilles and that all of the petitioners readily identify with Marseilles and either

work there or have lived there and, for the most part, have gone to school there. He likewise testified that it was not only a convenience to the parents and children but that educational benefits from the change would be a prime factor. Mr. Corley also testified that it would be difficult for Marseilles to function without State aid but that, with State aid, the annexation would not involve a financial burden in any manner.

On review of a decision by the school trustees involving a change of boundaries, a court of review is under a duty to consider the record to see whether the determination is supported by the evidence, but the court cannot substitute its judgment for that of the Board. The court of review would consider whether the board conformed to requirements of the School Code and whether the decision was against the manifest weight of the evidence. We recognize that there must be a measure of stability in the boundaries of school districts and that they cannot be changed by reasons of mere personal preference of the residents in the territory, without regard to other material considerations (Board of Education v. County Board of School Trustees, 19 Ill App2d 196, 153 NE2d 378, 381). The benefits derived by the area annexing should clearly outweigh the detriment to the losing district. There must also be no jeopardy to the educational resources of the losing district or to the annexing district. The basic consideration is the best interest of the pupils in the entire area as well as the school districts involved, and it is the welfare of the districts and the pupils which will control.

While there is relatively little evidence in the record on the educational benefits which would accrue to the children transferring into the Marseilles District, there is also no clear evidence that the transfer would be adverse to the interest of such children in the annexing district. The circumstance that the Marseilles school is nearer to the annexing district and evidence

444

showing that the children would be more likely to participate (as well as having parental participation) in the activities of the school, is a substantial factor for consideration. The record does not indicate that detachment would affect the ability of either the Seneca or Ottawa schools to meet standards of recognition or that the tax revenue of either district would be materially affected. We are left, therefore, with the record which discloses that the identity of the Marseilles territory with the interest of the petitioners and the annexing district is such that the benefit to be derived by the children and their parents is established of record. On the basis of such showing in the record, it cannot be stated that annexation as affirmed by the Circuit Court would not be clearly for the welfare of the students in the affected area. We are somewhat in the situation described in School Directors of District No. 82 v. Wolever, 26 Ill2d 264, 186 NE2d 281, where the court said, at page 267:

> "Upon administrative review, the role of the judiciary is merely to determine if this determination is against the manifest weight of the evidence (Bucholz v. Cummins, 6 Ill2d 382; Logan v. Civil Service Com., 3 Ill2d 81.) The judiciary is ill equipped to act as a super school board in assaying the complex factors involved in determining the best interest of the schools and the pupils affected by a change in boundaries."

As indicated by the Supreme Court in Oakdale Community School Dist. No. 1 v. County Board of School Trustees of Randolph County, 12 Ill2d 190, 145 NE2d 736, the welfare of the affected districts and their pupils as a whole must control rather than the wishes of a few, and the petition is to be granted only where the benefit derived by the annexing and affected area clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole. In the case be-

fore us, neither district will be affected in any substantial measure. As stated in Burnidge v. County Board, 25 Ill App2d 503, at 509, 167 NE2d 21, at 24:

> "So far as any benefit or detriment to either district is concerned the record shows that neither district will be affected in any substantial measure. Thus, the determination should be made to turn solely upon the welfare of the pupils. It is clear from the record that none of the pupils of either district excluding the students who live in the territory petitioning, will be affected by the granting or denial of the petition. But on the other hand, the evidence clearly shows that the welfare of the students living in the territory sought to be changed will clearly be affected."

The court pointed out in the Burnidge case that with the educational opportunities equal, there is an obvious advantage to a child attending a school in close physical proximity to the child's home. The additional saving in transportation costs and the time spent daily by children riding a bus involves a certain safety factor and a lessening of fatigue in going to and from school. The court emphasized, however, that even more than those considerations is the fact that an identification with the school district in the child's natural community center results in increased participation in school activities by the child and his parents. It is pointed out that such increased participation cannot but result in an improvement in the educational picture of the entire area.

■ ■ We had occasion in Wheeler v. County Board of School Trustees of Whiteside County, 62 Ill App2d 467, 210 NE2d 609, to consider similar issues. We pointed out in that case that while the personal wishes of individuals standing alone would not justify detachment of land from one school district and annexation to another

district, the factor of convenience to parents and children must be considered. We alluded to the Burnidge case and the value, from an educational standpoint, of attendance at a school in closer physical proximity to a child's home and in the natural community center where a child and parents would be more likely to participate in school activities. While these are not conclusive factors, they are significant items to be considered in detachment and annexation proceedings. We do not read into the School Code a requirement that in all detachment cases, the moving parties must show that the district to which they propose annexation has superior educational curriculum or facilities. Such consideration is an important factor to be considered, but other factors such as are involved in this case and the Burnidge case should also be considered by the Board in its determination of the issue of detachment and annexation. The record in the cause before us shows an apparent equality of educational values and there is evidence of a significant advantage to the children in the territory involved, to be in the Marseilles district which is physically closer and the natural community center for the children and the parents.

While we agree that the record might well have been supplemented in many areas, we do not believe, under the precedent of Burnidge v. County Board, supra, that we would be justified in reversing the decision of the Circuit Court in this cause.

The order of the Circuit Court of LaSalle County will, therefore, be affirmed.

Affirmed.

STOUDER, P. J. and RYAN, J., concur.