THE BOARD OF EDUCATION OF AVOCA SCHOOL DISTRICT NO. 37, COOK COUNTY, *et al.*, Plaintiffs-Appellants, *v.* REGIONAL BOARD OF SCHOOL TRUSTEES OF COOK COUNTY *et al.*, Defendants-Appellees.

First District (4th Division)   Nos. 79-647, 79-960 cons.

Opinion filed March 27, 1980.—Rehearing denied April 25, 1980.

Brydges, Riseborough, Morris, Franke and Miller, of Chicago (Allyn J. Franke, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Mark V. Chester, Assistant State's Attorneys, of counsel), for appellee Regional Board of School Trustees.

Vedder, Price, Kaufman & Kammholz, of Chicago (John A. Relias and Michael W. Duffee, of counsel), for appellees Nancy Ratner, Bonnie Becker, John Beckstedt, David Becker, Lynn Nord, Virginia Kane, J. Russell Augenstein, Donald Bunker, John Relias and Linda Relias.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County under the Administrative Review Act confirming the allowance of the detachment of certain territory from Cook County School District No. 37 and annexation of the same territory to School District No. 39. The complaint for review was filed by the board of education of Avoca School District No. 37 and a number of individual plaintiffs. The matter was appealed to the circuit court after a hearing by the Regional Board of School Trustees of Cook County (Regional Board) in which detachment was allowed. The validity of the detachment proceedings was challenged on two grounds: First, the petition filed with the Regional Board did not contain a sufficient number of valid signatures; and second, the evidence did not support the Regional Board's decision. The court remanded the cause to the Regional Board for determination of the sufficiency of the signatures to the petition for the change of boundaries. The matter was returned to the circuit court which confirmed the order of the Regional Board allowing the detachment. We affirm the trial court's decision.

On September 7, 1977, a petition was filed with the secretary of the Regional Board requesting detachment of the subject territory from Avoca schools (School District No. 37) and its annexation to the Wilmette schools (School District No. 39). Pursuant to section 7—1 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 7—1), the petition contained the

signatures of 172 individuals, more than the necessary two-thirds of the legal voters of the territory proposed to be detached. On December 23, 1977, a withdrawal of 35 signatures of persons who had signed the original petition was filed with the secretary of the Regional Board. In April 1978, a document withdrawing the previous withdrawal of signatures from the original petition was filed with the intent that the signatures on the original petition remain. There were 15 signatures on that document. In the same month an additional petition was filed which contained 13 new signatures.

The objectors to the detachment proceedings challenged the sufficiency of the signatures on the petitions after considering withdrawals and reinstatements. Following a full hearing, the Regional Board held that September 7, 1977, the petition filing date, was the date to be utilized for voter eligibility and determination of the petition's sufficiency. The Regional Board accepted the petition as filed and appointed a hearing officer, Richard J. Martwick, who heard the evidence on May 9, 1978.

The area involved in this case is a neighborhood of 107 single family homes located in the village of Wilmette. The Wilmette School District No. 39 is a district predominated by residents of the village of Wilmette. Evidence established that the petitioning area, located in the Avoca School District, comprised 2.4 percent of Avoca's total assessed valuation.

The children from the petitioning area can walk to the Wilmette elementary schools, the average distance from any house in the area to that school being only 2½ blocks. The farthest distance is 6 blocks. Many of the homes in the area are adjacent to the elementary school property.

The Avoca elementary school is over 2½ miles from the petitioning area. Travel from the area to the Avoca school requires crossing heavily traveled thoroughfares. Accident reports from the village of Wilmette indicate that traffic accidents occurred at an average rate of 1 every 3 days over the routes taken by Avoca school buses.

It was further established that the petitioning area is associated with the Wilmette School District for tax purposes. The Cook County assessor's 1976 neighborhood map includes the detached territory with other areas of the Wilmette School District and none of the Avoca School District. The Wilmette Tax Action Group, a civic organization that conducted analysis of real estate taxes within the village of Wilmette, placed the area with the Wilmette School District.

Residents of the petitioning area testified they identify with Wilmette rather than Avoca. One resident testified that her child's recreation center is Thornwood Park, which is two blocks from her home and located in the Wilmette School District. She indicated that all of her child's recreational activities are geographically located within Wilmette. Another resident testified that her children were unable to fully utilize the park district's activities during the school year because those activities are coordinated with Wilmette and not Avoca.

It was established that all residents of the petitioning territory voted either at Wilmette's Harper Elementary School or at other precincts within the Wilmette School District.

Evidence was offered concerning discipline problems within the Avoca schools. A special report issued by the Avoca district revealed there had been a problem throughout the district in the spring of 1977. The problem was reported to have included attacks and assaults on students and teachers along with defacement of school property.

Having heard the evidence, the Regional Board voted to detach the territory from Avoca and annex it to Wilmette. A petition for rehearing was denied, and Avoca filed its complaint for judicial review in the circuit court of Cook County. The complaint alleged that the Regional Board should have counted all withdrawals and reinstatements in its determination of the sufficiency of the petition, and that the decision to detach the area was not supported by the evidence. On August 22, 1978, the circuit court of Cook County, without deciding the merits, remanded the cause to the Regional Board for determination of the petition's sufficiency. The court directed that September 7, 1977, be the date for determining eligibility status of all legal voters in the territory and any withdrawals, reinstatements and additions would be counted if filed before June 1, 1978.

On remand and after further hearing, the Regional Board determined that after counting all valid signatures, 144 voters, or 70 percent of the eligible voters residing in the petitioning area, signed the detachment petition. This met the jurisdictional requirements of the statute which calls for signatures of two-thirds of the eligible voters.

Avoca again appealed to the circuit court, citing the decision of the Regional Board to allow additional signatures as well as the decision of the merits of the case. The circuit court responded to the complaints in two separate rulings. On February 28, 1979, the court dismissed the count of the complaint relating to additional signatures, ruling that it had already determined the issue. Finally, on March 22, 1979, the court held that the decision of the Regional Board detaching the territory from Avoca and annexing it to Wilmette was supported by the evidence.

Plaintiffs now appeal from the circuit court's decision, raising the issue of the sufficiency of the signatures and arguing the merits of the case. ■█ Plaintiffs question whether the Regional Board had jurisdiction over the detachment petition based upon a sufficient number of valid signatures. It has been the accepted rule in Illinois that a petitioner may withdraw his signature prior to the time the petition is acted upon and in the same manner in which he signed it. *People ex rel. Bodecker v. Kramer* (1947), 397 Ill. 592, 595, 74 N.E.2d 896, 898; *Heppe v. Mooberry* (1932), 350 Ill. 641, 647, 183 N.E. 636, 639; *People ex rel. School Directors v.*

*Oakwood* (1919), 290 Ill. 45, 47, 124 N.E. 829, 830; *People ex rel. Koensgen v. Strawn* (1914), 265 Ill. 292, 296, 106 N.E. 840, 842; *Board of Education v. County Board of School Trustees* (1976), 34 Ill. App. 3d 901, 904, 341 N.E.2d 10, 11.

The issue of first impression for this court is whether additional signatures as well as withdrawals and reinstatements are allowable after a petition has been filed. Plaintiffs argue that where the statute does not expressly permit additional signatures to be filed, an attempt to add new signatures to a petition at a later time is invalid. Plaintiffs' rationale is essentially that a petition must contain a sufficient number of valid signatures at the time it is filed in order to confer jurisdiction in the desired forum, and that the jurisdictional requirements must still exist at the time of final action by that forum. Those original petitioners, thus, control jurisdiction and, according to plaintiffs' contention, have an implicit right to destroy jurisdiction by withdrawing their signatures. Plaintiffs contend that other parties who do not sign the petition as filed are not petitioners have no rights, and cannot become petitioners by a later signing of the petition.

Defendants' response to plaintiffs' contention is that the policy in Illinois has been to recognize the value of uninhibited public debate and to permit voters to withdraw or reinstate their names to voluntary petitions. Defendants assert that in the absence of an expressed legislative intent to the contrary this court should comply with that general policy. To do so would require us only to count the valid signatures at the date of filing of the petition and at the date of final action by the petitioned forum.

■ We disagree with plaintiffs' argument. Our interpretation of section 7—1 of the School Code does not exclude any legal voter from participation in the petitioning process once there has been substantial compliance with jurisdictional requirements. We cannot accept plaintiffs' position that because certain parties exercise their statutory right to petition other parties forfeit the same right and cannot become petitioners prior to final action. The parties protected by the statute are all of the legal voters residing in the territory proposed to be detached, not just those who file a petition. The concern of the Regional Board taking such a matter under consideration should be that it does so at the request of not less than two-thirds of the legal voters in the affected territory. Further, any action taken on the matter must be conditioned upon the consent of not less than two-thirds of those voters regardless of whether the identities of the voters originally signing the petition are the same as those whose names appear on the petition at the date of final action.

The circuit court in this case properly issued an order in harmony with the requirements of the statute. By setting a date for determining

eligibility of all legal voters in the territory, and by setting a date to be used to count all withdrawals, reinstatements and additions, the court preserved the right of every legal voter in the territory to participate in the petitioning process.

We are cognizant of the treatment given a similar issue by the Wisconsin Supreme Court. That court has found the addition of signatures to voluntary petitions as well as withdrawals and reinstatements is allowable. The Wisconsin Supreme Court in *Town of Brookfield v. City of Brookfield* (1957), 274 Wis. 638, 80 N.W.2d 800, decided a case which was based on a challenge to an ordinance annexing territory to a city from a town. One of the grounds upon which the ordinance was challenged was that a petition was not properly signed by a majority of the electors within the territory proposed to be annexed. A petition was submitted which contained the names of a majority of the electors. A month later, a petition was filed requesting the withdrawal of enough signatures to destroy the majority. The following week an additional copy of the petition was filed in support of the annexation. That copy was signed by some of the original signers who had withdrawn their signatures and by six new electors who had not already signed a copy of the petition. The supplemental copy of the annexation petition brought the total number of elector signatures back to a majority. In framing the issue, the challengers to the petition conceded that electors have a right to withdraw signatures and those who withdraw have a right to reinstate their names anytime prior to final action. Their contention was that electors who did not sign the original petition for annexation could not thereafter file a supplemental petition. The Wisconsin Supreme Court stated:

> "Between those two dates [the filing of the petition and final action] signatures may be withdrawn and reinstated and supplemental petitions containing the signatures of qualified electors in the area who have not theretofore signed may be filed with and considered by the council in determining the sufficiency of the petitions at the time it finally enacts the ordinance. Under our procedure [the court's holding in this case], the signing of the petitions is a substitute for a referendum to determine that a majority of the electors within the area favor annexation." *Town of Brookfield*, 274 Wis. 638, 643, 80 N.W.2d 800, 803.

The basis for the court's decision was the reasoning that to require a certain number of legal voters to sign a petition was necessary to assure that electors within the affected area favored the action to be considered and to determine that a majority of the electors within the area favored annexation. We would adopt such a rationale in the case at hand. The provisions of the School Code, section 7—1, on petitioning for a change of boundaries serve in the same manner as a referendum requiring the

approval of two-thirds rather than a majority of the legal voters in the affected territory.

Plaintiffs contend that *Town of Brookfield* is distinguishable because in Illinois petitions are not a substitute for an official referendum. It is our interpretation that the Wisconsin Supreme Court used the term, referendum, in its purist sense. There is no attempt by the court's ruling to wrest power from the acting body or to replace any governmental process as plaintiffs would suggest. There is a clear distinction made between the favor of the electors and the actual enactment of the change. In our opinion, referendum as used by the court in *Town of Brookfield* refers to a poll of the voters to determine their choice and not a vote to enact a change in the law.

■ The Regional Board decided detachment was proper. Plaintiffs additionally argue that the decision of the Regional Board was not supported by the facts presented into evidence. In considering this issue, we cannot reweigh the evidence or substitute our own judgment for that of the Regional Board. (See *Board of Trustees v. Illinois Community College Board* (1976), 43 Ill. App. 3d 958, 357 N.E.2d 1222; *Stehl v. County Board of School Trustees* (1955), 7 Ill. App. 2d 257, 129 N.E.2d 297.) Upon administrative review, the role of the judiciary is merely to decide whether the determination of the Regional Board is against the manifest weight of the evidence. (*School Directors v. Wolever* (1962), 26 Ill. 2d 264, 267, 186 N.E.2d 281, 283.) We must review the record to determine whether the decision of the Regional Board is supported by any evidence or whether it is contrary to the manifest weight of the evidence. (*Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 195, 145 N.E.2d 736, 738; *Ottawa Township High School District No. 140 v. County Board of School Trustees* (1969), 106 Ill. App. 2d 439, 444, 246 N.E.2d 138, 140-41.) We are concerned with whether the benefit derived from the annexation of the affected territory outweighs the detriment to the district losing the territory and the community as a whole (*Oakdale Community Consolidated School District No. 1*, at 193-94), thereby determining that standards prescribed by the legislature have been upheld. See *Wolever*, at 267.

■ We disagree with plaintiffs' contention that the decision of the Regional Board is not supported by the facts, and, in making a benefit-detriment analysis, we find the annexation created greater benefit to the community than detriment.

The outstanding negative aspects of the boundary change are the increased distance to the territory junior high school and the loss of assessed valuation to the Avoca School District. The distance to be traveled to the Wilmette junior high school is significant because a key part of the argument for boundary change involves the distance traveled

to and from school. However, the voters in the territory expressed approval over having the elementary school closer to the territory than the junior high school which an older age group of children would attend. Though the increased distance may be undesirable by some standard, it is difficult to view as a detriment to the community the Regional Board's election to have younger children traveling a shorter distance to and from elementary school and older children traveling the farther distance to junior high school.

The loss of the assessed valuation resulting from the detachment from School District No. 37 is also a negative aspect. It is significant because the certainty of a minimum level of funding is essential to any school system. The record indicates the territory's assessed valuation is less than 2.4 percent of Avoca's total assessed valuation. Additionally, Avoca's total valuation increased 16.5 percent in 1977 due to quadrennial reassessment. The result is that Avoca is a financially healthy district operating at a surplus. Nothing in the record indicates the detachment would dramatically change that position.

The prime benefits to the affected area are that the elementary school children will be closer to home, avoiding travel over congested traffic routes. Also, school children will become members of a school district in which their families already carry on many activities. The average distance from the territory to the Wilmette elementary school the children would attend is 2½ blocks. Many of the homes in the territory are adjacent to and abut the school property.

The record indicates the county assessor placed the territory with Wilmette. The park principally used by territory families is coordinated with the Wilmette School District, and, except for elementary school elections, the majority of the territory citizens vote at precincts located in the Wilmette district. No residents of the Avoca District are similarly situated.

We conclude that these factors, supported by the record, are sufficient to permit the Regional Board to determine, as they did, that the granting of the detachment petition would be in the best interest of the affected territory and the community as a whole. We have assured that the ultimate decision rests with the Regional Board to maintain the welfare of its school system. When the record indicates, as it does here, that the conclusions of a regional board have been supported by the evidence and statutory standards have been met, its decision must be affirmed.

It follows that the order of the Regional Board of School Trustees of Cook County, Illinois, as confirmed by the trial court is affirmed.

Affirmed.

JIGANTI and ROMITI, JJ., concur.